UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANDREW MAURICE RANDOLPH,

                              Petitioner,          Case No. 21-10456
                                                   Honorable Shalina D. Kumar
v.

MATT MACCAULEY,

                              Respondent.

---

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY OR LEAVE TO APPEAL *IN FORMA PAUPERIS*

The petitioner, Andrew Maurice Randolph, presently incarcerated at the Brooks Correctional Facility in Muskegon Heights, Michigan, has filed an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, through his attorneys. Petitioner challenges his convictions for second-degree murder, M.C.L. 750.317, intentionally discharging a firearm in a building, M.C.L. 750.234b, felon in possession of a firearm, M.C.L. 750.224f, and possession of a firearm in the commission of a felony (felony-firearm), M.C.L. 750.227b. For the reasons that follow, the petition for writ of habeas corpus is **DENIED WITH PREJUDICE**.

1

## I. Background

This Court recites verbatim the relevant facts relied upon by the

Michigan Supreme Court in its initial opinion, *People v. Randolph*, 917

N.W. 2d 249 (Mich. 2018). Such facts are presumed correct on habeas

review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith*, 581 F.3d

410, 413 (6th Cir. 2009). They are as follows:

> Defendant lived with his girlfriend, Kanisha Fant. They
> quarreled throughout the night of December 9, 2012, with
> defendant making various threats against Fant's family. At some
> point, he packed his belongings into bags but left them behind
> when he departed. Kanisha's mother, Vena Fant, brought the
> bags to the home of defendant's father, Alphonso Taylor.

> The next day, gunshots struck Vena's home. One bullet
> pierced Vena's neck, killing her. After the police arrived,
> defendant showed up at the scene and was taken into custody.
> The police lacked sufficient evidence to charge defendant,
> however, and he was released. The same day, without a search
> warrant, the police obtained Taylor's consent to search the bags
> containing defendant's belongings. They found several rounds of
> .357 ammunition. The Bureau of Alcohol, Tobacco, Firearms,
> and Explosives was alerted, and it obtained an arrest warrant for
> defendant's violation of federal law prohibiting a felon (which he
> was) from possessing ammunition.

> In February 2013, an arrest warrant was issued and
> executed on defendant at his brother's apartment, where
> defendant had been staying. Because his brother was on parole,
> the police searched the apartment based on his brother's parolee
> status. During the search, they found a handgun linked to the
> homicide.

> Defendant was charged with first-degree premeditated
> murder and felony-firearm, among other things. The

2

prosecution's case relied, in part, on testimony about threats defendant had made to the victim's family on December 10 and evidence of the ammunition and gun found during the investigation. Regarding the threats, Linda Wilkerson, the sister of Vena's fiancé, testified that Vena said that defendant, throughout the day, had been calling and threatening to kill the family. Vena told Wilkerson that everyone needed to be alert. Defense counsel did not object to this testimony, nor did he object to the admission of the ammunition and gun.

Defendant was convicted of the lesser offense of second-degree murder, MCL 750.317, discharging a firearm into a building, MCL 750.234b, being a felon in possession of a firearm, MCL 750.224f, and possessing a firearm during the commission of a felony, MCL 750.227b. On appeal, defendant argued, among other issues, that his trial counsel was constitutionally ineffective, and the Court of Appeals remanded to the trial court for a *Ginther* hearing. Defendant's father, Taylor, testified at the hearing that defendant was not living at his house when Vena brought defendant's belongings there, and, in fact, had never lived there. Taylor was told to give the bags to defendant, and he testified that he never touched the bags or received defendant's permission to open them. When the police searched the items, they never asked if Taylor had permission to go through them. Trial counsel admitted at the hearing that there was no strategic reason for failing to file a motion to suppress the ammunition found at Taylor's house. He simply thought defendant lacked standing to make such a claim.

The trial court rejected defendant's claim of ineffective assistance of trial counsel, finding that counsel's performance was not deficient and that, in any case, defendant was not prejudiced. Defendant appealed. He also raised a host of unpreserved errors, asking that they be reviewed for plain error. For the reasons discussed below, the Court of Appeals affirmed defendant's conviction, finding neither his claims of trial court error nor his claim of ineffective assistance persuasive. Defendant sought leave to appeal in this Court, and we ordered briefing on "whether a defendant's failure to demonstrate plain error precludes a finding of ineffective assistance of trial counsel;

3

and, in particular, . . . whether the prejudice standard under the third prong of plain error . . . is the same as the *Strickland [v. Washington]* prejudice standard . . . ."

*Randolph*, 917 N.W. 2d at 250–52 (Mich. 2018) (footnotes omitted).

The Michigan Supreme Court held that the Michigan Court of Appeals erred in applying the plain error standard to analyze petitioner's ineffective assistance of counsel claims and remanded the matter to the Michigan Court of Appeals to analyze and review petitioner's ineffective assistance of counsel claims under *Strickland v. Washington*, 466 U.S. 668 (1984). *Randolph*, 917 N.W. 2d at 259.

On remand, the Michigan Court of Appeals rejected petitioner's ineffective assistance of counsel claims and again affirmed his conviction. *People v. Randolph*, No. 321551, 2019 WL 286678, at *8 (Mich. Ct. App. Jan. 22, 2019). The Michigan Supreme Court denied leave to appeal. *People v. Randolph*, 949 N.W.2d 714 (Mich. 2020).

Petitioner then commenced this action, seeking a writ of habeas corpus on the following grounds. ECF No. 1.

I. Randolph's constitutional right to effective assistance of counsel was violated when trial counsel failed to object or otherwise challenge the testimony of two police officers about the positive results of a preliminary gunshot residue test performed on Randolph's hands the night of the shooting even though it was clear that neither of the testifying police officers performed the test, neither was a qualified expert in performing the test or even knew how to perform the test, both were relying on hearsay

4

testimony about the test results from the person who had actually performed it, and the test itself relied on junk science that is not generally accepted in the scientific community because it is so unreliable. The state court unreasonably erred when it failed to recognize this constitutional violation.

II. Randolph's constitutional right to effective assistance of counsel was violated when trial counsel failed to move to suppress evidence obtained as a result of an illegal search of Randolph's belongings that relied on the consent of a third-party who did not have common or apparent authority to consent, and the state court unreasonably erred when it failed to recognize this constitutional violation.

III. Randolph's constitutional right to effective assistance of counsel was violated when trial counsel failed to object to the impermissible and highly prejudicial hearsay testimony of multiple witnesses who were permitted to share statements that others had allegedly made to them recounting threats that Randolph had allegedly made on the day of the shooting. The state court unreasonably erred when it failed to recognize this constitutional violation.

IV. Randolph's constitutional right to effective assistance of counsel was violated when trial counsel failed to object to impermissible character evidence about ammunition found in Randolph's belongings and the existence of a federal warrant for his arrest even though this evidence had no relevance to the charges at issue and could only be considered by the jury to establish Randolph's propensity to violate the law and possess weapons. The state court unreasonably erred when it failed to recognize this constitutional violation.

V. Trial counsel's numerous unprofessional errors, considered cumulatively, are prejudicial and independently merit habeas relief.

## II. Standard of Review

Title 28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.

6

A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). To obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

### III. Discussion

Petitioner argues he was denied the effective assistance of trial counsel. To show the ineffective assistance of counsel under federal constitutional standards, a defendant must satisfy a two-prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. In so doing, the defendant must overcome a

strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.* In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Id.* at 689.

Second, the defendant must show that such performance prejudiced his defense. *Id.* at 692. To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011) (quoting *Harrington*, 562 U.S. at 112). Under *Strickland*, a petitioner—not the state—bears the burden of showing a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

More importantly, on habeas review, the question "is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable— a substantially higher threshold." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (cleaned up). "The pivotal question is whether the state court's

8

application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington*, 562 U.S. at 101. Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles*, 556 U.S. at 123 (citing *Yarborough*, 541 U.S. at 664).

Because a habeas court already reviews a state court decision with deference pursuant to § 2254(d)(1), a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.* This means that on habeas review of a state court conviction, "a state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Harrington*, 562 U.S. at 101.

Because of this doubly deferential standard, "[f]ederal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d)." *Id.* at 105. "When § 2254(d) applies, the question is not whether counsel' s actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.* A reviewing court must also affirmatively entertain the range of possible reasons that counsel

9

may have had for proceeding as they did. *Cullen v. Pinholster*, 563 U.S. 170, 196 (2011). "[R]eliance on 'the harsh light of hindsight' to cast doubt on a trial that took place" several years ago "is precisely what *Strickland* and AEDPA seek to prevent." *Harrington*, 562 U.S. at 107.

As an initial matter, respondent argues that habeas relief should be denied because the petition fails to specify the facts in support of petitioner's claims. Under Rule 2(c) of the Rules Governing Section 2254 Cases, a petitioner must not only specify all the grounds for relief available but also "state the facts supporting each ground." *Mayle v. Felix*, 545 U.S. 644, 669 (2005) (citing Rule 2(c), 28 U.S.C. foll. ¶ 2254).

Here, although the petition did not specify the facts underlying each claim, petitioner's attorneys have attached a 122-page brief in support of the petition which more than adequately alleges the facts underlying the claims and the legal arguments in support of the claims. Petitioner has asserted his claims with adequate particularity by stating these facts and law in his brief in support of his petition. *See Dye v. Hofbauer*, 546 U.S. 1, 4 (2005) (holding habeas petitioner asserted his claim with more than sufficient particularity where his petition made clear and repeated references to appended supporting brief that asserted claim with detail). Accordingly, the Court proceeds to analyze petitioner's claims.

## A. Claim I: Failure to Object to Testimony Concerning the Dermal Nitrate Test

Petitioner first argues that trial counsel was ineffective for failing to object to testimony from two police officers concerning a gunshot residue test performed on petitioner on the night of the murder. Petitioner claims this testimony should have been excluded because neither officer was qualified as an expert in the area of gunshot residue tests, their testimony was based on hearsay evidence, and gunshot residue or dermal nitrate tests have been shown to be unreliable or "junk science" because numerous substances other than gunpowder can lead to a positive result.

The Michigan Court of Appeals soundly rejected petitioner's claim:

> At the *Ginther* hearing, counsel testified about his research into this matter and his trial strategy at considerable length. It is true that he stated that he felt that defendant had "pushed [him] into" the strategy of not seeking exclusion of the evidence concerning the gunshot-residue test. But upon further questioning, counsel explained that he was aware that because there are sources of nitrates aside from gunpowder, the nitrate test cannot conclusively detect the presence of gunpowder residue. Counsel further explained that defendant had confidentially admitted that his brother, Jonathan, was the shooter in the drive-by shooting that killed the victim, further admitting that defendant was in the vehicle during the drive-by. Hence, counsel was concerned that "there was a very real possibility that [defendant] *was* covered with gunshot residue" when the police collected samples from him. (Emphasis added.) Counsel's tacit suggestion was that moving to exclude evidence of the nitrate test might have prompted the prosecution to pursue further forensic testing, which might have, in turn, *conclusively*

11

established the presence of gunpowder residue. [emphasis original].

Counsel was also concerned that, if he tried to exclude the evidence on grounds of scientific unreliability or under the Confrontation Clause, he might prompt the prosecution to secure expert witnesses (including the person who actually administered the test), and that such experts might have testified about the test at greater length, thereby reinforcing its significance—and perhaps its reliability—in the jury's view. This was particularly true in this case because counsel's preliminary legal research indicated that, as this Court noted in *Randolph I*, slip op. at 7, there is a split of authority in other jurisdictions about whether such preliminary gunshot-residue tests are admissible as proof of the presence of nitrates, which might be indicative of gunpowder residue. Thus, counsel would have had no guarantee that he would succeed in moving to exclude the evidence. Counsel was also concerned that if he tried to exclude the evidence—or to strike any improper testimony offered about it— the jury would view his tactics as irritating and obstructionist, inferring that the defense must be "desperate" to hide important forensic evidence. This might have suggested to the jury that the nitrate-test results were inculpatory, rather than irrelevant. Furthermore, in counsel's experience, motions to strike serve no constructive purpose—once testimony is heard, it cannot be unheard any more than a bell can be unrung. He noted that, in his experience, it is imprudent to treat jurors as if they are "idiots." For those reasons, counsel sought to minimize how much testimony was offered about the nitrate test, to prevent the lay witnesses who testified about it from offering any expert opinions, and to highlight the test's lack of relevance to the jury. This strategy was intended to strengthen the defense theory of the case, which was that someone else had been the shooter, and that the police initially released defendant—after the positive result on the nitrate test—because they knew that there simply was not enough evidence to prove that he was the shooter beyond a reasonable doubt.

Given the difficulty of this case, and what defendant had confidentially revealed, the trial court did not err by concluding

12

that defendant failed to rebut the presumption that counsel's strategy concerning the nitrate test was effective. On the contrary, we find all of counsel's stated concerns at the *Ginther* hearing to be reasonable and well-founded . . . .

In light of what counsel knew and the circumstances of the case, any reasonably competent attorney might have reached the same conclusion, deciding that it was better to minimize evidence of the nitrate test—and offer post-hoc criticism of it as irrelevant during closing arguments—rather than run the risk of doing the opposite: underlining its importance by frequent objection and motions to strike . . . .

Moreover, it was reasonable for counsel to fear that, had he moved to exclude such evidence, the prosecution might have called expert witnesses to support its admission and reliability, or it might have performed additional forensic testing. On this record—even as augmented by the *Ginther* hearing—defendant has not shown that these concerns were unreasonable. Although the defense expert testified that, once a sample is subjected to the nitrate test, more conclusive forensic tests for gunshot residue cannot be performed on that same sample, defendant has presented no evidence that additional samples were not collected that might have been subjected to the more conclusive tests described by the expert. Defendant developed no record on that point at the *Ginther* hearing. Thus, defendant has not rebutted the presumption that his trial counsel's strategic decisions concerning the nitrate-test evidence were sound.

Furthermore, as this Court noted in *Randolph I*, slip op. at 10, even assuming, arguendo, that counsel performed ineffectively by failing to move to exclude this evidence or to strike improper testimony about it, defendant has failed to demonstrate any reasonable probability of a different outcome but for counsel's failure to do so. The prosecution witnesses who testified concerning the nitrate test were never qualified as experts, and on cross-examination, defense counsel highlighted the fact that those witnesses had no training or expertise regarding the nitrate test. Defense counsel also used the nitrate-test evidence to defendant's benefit, arguing that the jury should

infer, from the fact that defendant was released despite the results, both that the test was meaningless and that the prosecution's reliance on such irrelevant evidence demonstrated that its case against defendant was weak.

*Randolph*, 2019 WL 286678, at *3-10 (footnotes omitted).

Many reasons support the Michigan Court of Appeals' decision, precluding habeas relief on this claim. To start, petitioner's counsel did object to the officers testifying about the gunshot residue tests both on the grounds that their testimony was based on hearsay, and they lacked the qualifications to testify about nitrate tests. ECF No. 6-9, PageID.763, 770-74, 777-79. Because counsel did, in fact, object to this testimony, petitioner's ineffective assistance of counsel claim is without merit. *See, e.g.*, *Durr v. Mitchell*, 487 F.3d 423, 440 (6th Cir. 2007) (denying claim that counsel was ineffective for failing to object to a statement where counsel did in fact do so).

Further, counsel had valid reasons for not moving to strike the officers' testimony or to repeatedly object. "If an attorney chooses not to place certain objections on the record or move to strike certain testimony, that does not conclusively mean that his legal representation is deficient or that the defendant will suffer prejudice as a result." *Freeman v. Trombley*, 744 F. Supp. 2d 697, 708 (E.D. Mich. 2010), *rev'd and remanded on other grounds*, 483 F. App'x 51 (6th Cir. 2012).

14

Counsel indicated that he made a strategic decision not to move to strike the testimony or to repeatedly object to this testimony to avoid bringing undue attention to the evidence. *See Cobb v. Perini*, 832 F.2d 342, 347-48 (6th Cir. 1987). "[N]ot drawing attention to [a] statement may be perfectly sound from a tactical standpoint." *United States v. Caver*, 470 F.3d 220, 244 (6th Cir. 2006). Counsel could have reasonably determined that any further objection to the officers testifying about the results of the nitrate test would have been futile and might have led to the prosecutor calling the technician who actually performed the test. *See Linicomn v. Thaler*, 358 F. App'x 549, 551 (5th Cir. 2009). This technician could have offered testimony that was more damaging to petitioner than the limited testimony offered by the police officers.

"[I]n many instances cross-examination will be sufficient to expose defects in an expert's presentation." *Harrington,* 562 U.S. at 111. Counsel's choice to attack the credibility of the officers' testimony concerning the results of the gunshot residue test through cross-examination, rather than to object to its admissibility, is a valid strategy. *See e.g. Jackson v. McQuiggin,* 553 F. App'x 575, 580-82 (6th Cir. 2014) (holding trial counsel was not ineffective by opting to forgo defense expert testimony in arson prosecution, when counsel educated herself on principles of arson

15

investigation, consulted with arson expert, conferred with defense attorneys, and elicited concessions from prosecution expert on cross-examination). Petitioner, therefore, is unable to show that counsel's failure to repeatedly object to the officers' testimony—thus drawing attention to it—was deficient rather than strategic, thereby failing to support an ineffective assistance of counsel claim. *See Smith v. Bradshaw*, 591 F. 3d 517, 522 (6th Cir. 2010).

In addition, counsel was able to use the officers' testimony concerning the nitrate test to petitioner's benefit, when he argued that that the jury should infer, from the fact that petitioner was released from custody despite the results, both that the test was meaningless and that the prosecution's reliance on such irrelevant evidence demonstrated that it had a weak case. Defense counsel is not ineffective for failing to object to evidence or testimony that is beneficial to the defense. *See Karis v. Calderon*, 283 F.3d 1117, 1130 (9th Cir. 2002) (holding counsel not ineffective for failing to object to admission of witness testimony that conflicted with defendant's statements, when counsel believed testimony also served beneficial purpose).

Lastly, petitioner failed to show that counsel was ineffective for failing to move to exclude the gunshot residue evidence on the ground that it was

16

scientifically unreliable. Petitioner bases this part of his claim on *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), under which expert testimony may be challenged for its reliability and relevance. At the *Ginther* hearing, petitioner called an expert witness to testify that gunshot residue or dermal nitrate tests are unreliable and positive results on such tests often come from other substances. The Michigan Court of Appeals, however, indicated that there is a split of authority about whether such preliminary gunshot-residue tests are admissible to show the presence of nitrates, which only then might be indicative of gunpowder residue. *Randolph*, 2019 WL 286678, at * 2. Indeed, the Sixth Circuit long ago rejected a habeas petitioner's challenge to the admission of a dermal nitrate test at his state trial, albeit without much discussion and before *Daubert*. *See Clarke v. Henderson*, 403 F.2d 687, 688 (6th Cir. 1968).

Because petitioner failed to show that the Michigan courts would have categorically excluded such gunshot residue or dermal nitrate test, the Court cannot conclude that he was prejudiced and thus counsel was ineffective for failing to object to the admission of such evidence or move for a *Daubert* hearing on the admissibility of this evidence. *See Flick v. Warren*, 465 F. App'x 461, 465 (6th Cir. 2012). Accordingly, petitioner is not entitled to relief on his first claim.

## B. Claim II: Failure to Suppress Evidence

Petitioner next argues that trial counsel was ineffective for failing to move to suppress evidence obtained as the result of a search based on what he argues was the invalid consent of petitioner's father.

Upon initial review of petitioner's case, the Michigan Court of Appeals ruled that petitioner failed to show plain error regarding the underlying Fourth Amendment violation:

> During a lull in the fight with his girlfriend, defendant packed up his clothes in preparation for moving out. During the final altercation, defendant's girlfriend tried to get a phone to call the police. Defendant ran off, leaving his belongings behind, and never returned. In the meantime, the police responded to the scene and called Vena Fant and Miller, who went over to attend to Vena's daughter. Vena and Miller collected defendant's belongings and delivered them to defendant's father, Alphonso Taylor. Officers later went to Taylor's house and obtained his consent to search. Among defendant's belongings, the police found several rounds of .357–caliber ammunition. That ammunition led to the issuance of an arrest warrant on a federal charge and, after defendant was arrested, the murder weapon was discovered.

> Defendant raises different challenges to this evidence. First, he contends that Taylor did not have authority to consent to the search of his belongings, and therefore, the ammunition was obtained in violation of his Fourth Amendment rights and should have been suppressed. Defendant further argues that because that search eventually led to the discovery of the murder weapon, that should have been suppressed as well. . . .

> Because the available record is insufficient to establish a Fourth Amendment violation, defendant has not shown plain error. See *People v. Marcus Davis*, 250 Mich.App 357, 364; 649 NW2d 94

18

(2002). While the record presented indicates that Taylor did not have actual authority to consent to a search of defendant's belongings, see *People v. Brown*, 279 Mich.App 116, 131; 755 NW2d 664 (2008), and did not, in light of his statements to the police, have apparent authority to consent to the search, see, e.g., *United States v. Waller*, 426 F3d 838, 845–849 (CA 6, 2005), *United States v. Basinski*, 226 F3d 829, 834–835 (CA 7, 2000), and *United States v. Fultz*, 146 F3d 1102, 1105–1106 (CA 9, 1998), the fact that defendant left his belongings behind when he fled and never returned suggested that he abandoned his belongings and thus lacks standing to raise this issue. See *People v. Henry*, 477 Mich. 1123; 730 NW2d 248 (2007), and *People v. Taylor*, 253 Mich.App 399, 406; 655 NW2d 291 (2002). While it is possible that defendant was responsible for having his things transferred to Taylor, such that he may not have abandoned them, the available record lacks sufficient information to make that determination. See *Basinski*, 226 F3d at 837–838. Further, even assuming that the ammunition was found as the result of an illegal search, the record does not contain sufficient information to determine whether the gun was likewise subject to suppression. See *People v. Jordan*, 187 Mich.App 582, 588; 468 NW2d 294 (1991). Accordingly, defendant has not met his burden of establishing a plain error affecting his substantial rights.

*People v. Randolph*, No. 321551, 2015 WL 7574328, at *5 (Mich. Ct.

App. Nov. 24, 2015), *rev'd in part*, 917 N.W.2d 249 (Mich. 2018).

On remand, the Michigan Court of Appeals held that counsel was not

ineffective for failing to move to suppress the evidence seized from

petitioner's father's house:

Next, defendant argues that trial counsel was ineffective for failing to move to suppress evidence of the guns and ammunition. Specifically, he argues that the guns were found in connection with defendant's arrest, which was based upon ammunition found at defendant's father's house in defendant's

19

belongings pursuant to a search conducted without a warrant under consent granted by defendant's father. This ignores the fact that ammunition was found in his father's house not only in defendant's bags but also in a bedroom. Defendant offers no argument that he would have had standing to challenge the .38-caliber ammunition that was found in the bedroom, nor does he explain why that ammunition does not constitute an independent basis—completely separate from the challenged search of his bags—that justified the later actions taken by the government, including the issuance of a warrant for defendant's arrest.

In any event, even assuming, for the sake of argument, that his father did *not* have apparent authority to authorize a search of defendant's bags, defendant has failed to develop a sufficient record for this Court to accurately determine whether he had a reasonable expectation of privacy in the contents of those bags. As this Court recently explained in *People v. Mead* (On Remand), 320 Mich. App. 613, 622; 908 N.W.2d 555 (2017):

> A warrantless search of abandoned property does not violate the Fourth Amendment. Fourth Amendment protections apply only when a person has an expectation of privacy in the searched property. By definition, a person lacks an expectation of privacy in abandoned property. A person is considered to have abandoned property when he voluntarily discarded, left behind, or otherwise relinquished his interest in the property so that he could no longer retain a reasonable expectation of privacy in the property at the time of the search. For example, a person abandons a bag when he discards it while running from the police. [Quotation marks and citations omitted.]

In a given case, whether a reasonable expectation of privacy exists involves "a two-part inquiry: first, has the individual manifested a subjective expectation of privacy in the object of the challenged search? Second, is society willing to recognize that expectation as reasonable?" *California v. Ciraolo*, 476 U.S. 207, 211; 106 S.Ct. 1809; 90 L.Ed. 2d 210 (1986)(emphasis added). In this case, the record—even as supplemented by the *Ginther* hearing—is not sufficient to answer the first part of this inquiry. Defendant testified neither at trial nor at the *Ginther* hearing. As

20

a result, there is no explicit evidence that he had a subjective expectation of privacy in the bags or their contents. Nor do his actions implicitly suggest such an expectation. On the contrary, the fact that defendant left his bags unattended at his girlfriend Kanisha's house—after he had just physically assaulted her—strongly suggests that he lacked any subjective expectation of privacy. In any event, because there is no evidence that he had a subjective expectation that the contents of his bags would remain private after he left them and failed, on a timely basis, to come back and retrieve them, defendant cannot satisfy the second prong of *Strickland* here. He cannot demonstrate that there is a reasonable probability that a motion to suppress based on the search of the bags would have been successful, and without showing that it might have been successful, he cannot demonstrate a reasonable probability that counsel's failure to make such a motion affected the outcome of the trial.

Moreover, even if there were some circumstantial evidence that defendant had a subjective expectation of privacy in his abandoned bags, he cannot demonstrate that that expectation was *objectively* reasonable. Put in the plainest terms, defendant's argument depends on his presupposition that after beating Kanisha up, then fleeing from her house (and leaving his bags behind in his haste to avoid the police), it was objectively reasonable for him to expect that those bags and their contents would be left where he had placed them, undisturbed. As a matter of common sense, this is simply not so. Even if defendant had no reason to believe that the police might search his bags upon arriving at Kanisha's residence, a reasonable individual in his position would have every reason to suspect that, enraged by his conduct, Kanisha might subsequently dispose of those bags, destroy or sell their contents, intentionally expose their inculpatory contents to law enforcement, or throw them from a nearby rooftop. After abandoning his bags under these circumstances, it was not reasonable for defendant to believe that he would nevertheless retain some right to privacy concerning their contents.

In light of our conclusion that defendant has failed to demonstrate that a motion to suppress the initial fruits of the search of his bags

21

(i.e., the ammunition found in them) would have been successful, it necessarily follows that he has also failed to demonstrate that a motion to suppress the fruits of the ammunition (particularly the murder weapon) would have been successful. Accordingly, we need not analyze that issue further. In sum, defendant's instant claim of ineffective assistance is meritless. He has failed to demonstrate that a motion to suppress any of the evidence in question would have been successful, and thus he cannot carry his burden of proving either prong of the *Strickland* test.

*Randolph*, 2019 WL 286678, at * 6–7 (emphases original) (footnote

omitted).

"Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness," a defendant must also prove that his Fourth Amendment claim "is meritorious" and that there "is a reasonable probability that the verdict would have been different absent the excludable evidence[,] in order to demonstrate actual prejudice." *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986); *see also Mack v. Jones,* 540 F. Supp. 2d 840, 848 (E.D. Mich. 2008).

A criminal defendant has the burden of establishing his standing to challenge a search or seizure in violation of the Fourth Amendment. *Rakas v. Illinois*, 439 U.S. 128, 130, n.1 (1978). In order to make this showing, the defendant must satisfy a two-part test: (1) whether he manifested a subjective expectation of privacy in the object of the challenged search;

and (2) whether society is prepared to recognize that expectation as legitimate. *California v. Ciraolo*, 476 U.S. 207, 211 (1986).

The warrantless search and seizure of abandoned property does not violate the Fourth Amendment. *Abel v. United States*, 362 U.S. 217, 241 (1960). In the Fourth Amendment context, whether property has been abandoned "turns upon whether a person can claim a continuing, legitimate expectation of privacy in the item at issue." *United States v. Nelson*, 725 F.3d 615, 622 (6th Cir. 2013) (quoting *United States v. Robinson*, 390 F.3d 853, 873 (6th Cir. 2004), *as clarified on denial of reh'g* (Jan. 16, 2014).

Many courts have held that a defendant no longer has a legitimate expectation of privacy in property that he has abandoned. *Abel*, 362 U.S. at 241 (defendant abandoned articles recovered from hotel room which he had vacated); *Nelson*, 725 F.3d at 622 (defendant abandoned gun by throwing it in bushes); *United States v. Jones*, 406 F. App'x 953, 954 (6th Cir. 2011) (defendant abandoned jacket where defendant fled from officers into bar, left jacket at rear of bar before officers arrived to pat him down).

In the present case, it was reasonable for the Michigan Court of Appeals to conclude, based on the facts in this case, that petitioner had abandoned his bags when he left them at his girlfriend's house after assaulting her and then fleeing the house so as to avoid arrest by the

police. In these circumstances, petitioner would have had no continued

expectation of privacy in his bags. *See, e.g.*, *United States v. Walker*, 199

F. App'x 884, 886 (11th Cir. 2006) (holding not clearly erroneous finding

that defendant had abandoned bags left at cousin's apartment, forfeiting

Fourth Amendment rights to bags—that defendant knew authorities

pursued him with knowledge that he stayed with his cousin strongly

supported inference that when defendant fled from cousin's apartment

parking lot, he did not plan to return).

In light of the fact that petitioner abandoned his bags at his girlfriend's

house from which he fled after physically assaulting her, and that petitioner

would therefore have no standing to challenge the search of these bags,

the Michigan Court of Appeals reasonably determined that counsel was not

ineffective for failing to bring a motion to suppress the evidence obtained

from the bags. *See, e.g.*, *Pineda v. Warden*, *Calhoun State Prison*, 802

F.3d 1198, 1203 (11th Cir. 2015).

Petitioner's lack of standing to challenge the search and seizure of

his abandoned property defeats both his Fourth Amendment claim and his

related ineffective assistance of counsel claim. It is unnecessary for the

Court to determine whether petitioner's father's consent to the search was

valid or whether counsel was ineffective for failing to challenge the search

on this basis, because the Michigan Court of Appeals reasonably concluded that petitioner had abandoned his bag and its contents when he fled his girlfriend's residence after assaulting her. Accordingly, petitioner is not entitled to relief on his second claim.

### C. Claim III: Failure to Object to Hearsay Evidence

Petitioner next contends that trial counsel was ineffective for failing to object to hearsay testimony regarding threats made by petitioner towards the victim the day of the murder.[1] Petitioner's claim concerns the testimony of Linda Wilkerson and Detective-Sergeant Valencia Jones and argues more specifically that trial counsel should have objected to their testimony which repeated statements made by other persons concerning the threats made by petitioner.

The Michigan Court of Appeals rejected petitioner's claim. As that court noted, Linda Wilkerson lived with the victim and arrived at their home "less than an hour before the shooting. [Wilkerson testified that] [a]fter the victim's friend left, the victim told Wilkerson that defendant had been calling

---

[1] To the extent petitioner contends that trial counsel should have objected to the admissibility of the threats themselves, although the threats were out-of-court statements, they were made by petitioner and therefore admissible under Michigan Rule of Evidence 801(d)(2) as the admission of a party-opponent. Accordingly, trial counsel was not ineffective for failing to object to petitioner's out-of-court statements such as the threats he made towards the victim. *See Robins v. Fortner,* 698 F.3d 317, 335 (6th Cir. 2012).

all day threaten' [sic] to kill the family, especially Wilkerson's son and the victim's nephew." *Randolph*, 2019 WL 286678, at *4 (cleaned up).

The Michigan Court of Appeals found that Wilkerson's testimony was admitted for a non-hearsay purpose, "to explain the effect of the victim's out-of-court statements on Wilkerson's subsequent actions" and "why—despite her presence in the victim's home—Wilkerson did not witness the drive-by shooting or see the victim's fatal wounding." *Id.* The Michigan Court of Appeals further held that petitioner failed to sustain his burden at the *Ginther* hearing of showing that Wilkerson's statements could not come in under the excited utterance exception to the hearsay rule and thus failed to show that counsel was ineffective for failing to object to their admission. *Id.* at *5.

Petitioner further argues that counsel should have objected to Detective-Sergeant Valencia Jones's testimony that the victim's family had told her that petitioner left several threatening messages on their answering machine. The Michigan Court of Appeals rejected the claim as it concerns this testimony because the testimony was also admissible for a non-hearsay purpose—to explain why Jones subsequently accessed the victim's answering machine, listened to its contents, which she described to the jury, and recorded one of the messages, which was played for the jury

26

and admitted into evidence. The Michigan Court of Appeals concluded that the challenged testimony was also part of the foundation to admit this audio recording. *Id.* at *6. The Michigan Court of Appeals also concluded that petitioner failed to establish that Jones's testimony could not have been admitted under the excited utterance exception to the hearsay rule and strongly suggested that such testimony would have been admissible under this exception. *Id.*

Federal habeas courts "'must defer to a state court's interpretation of its own rules of evidence and procedure' when assessing a habeas petition." *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005) (quoting *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988)). Because the Michigan Court of Appeals determined that this evidence was admitted for a proper non-hearsay purpose under Michigan law, this Court must defer to that determination in resolving petitioner's ineffective assistance of counsel claim. *See Brooks v. Anderson*, 292 F. App'x. 431, 437-38 (6th Cir. 2008). Because these out-of-court statements were deemed admissible for non-hearsay purposes, trial counsel was not ineffective for failing to object to their admission. *See Flood v. Phillips,* 90 F. App'x. 108, 119 (6th Cir. 2004). This Court "cannot logically grant the writ based on ineffective assistance of counsel without determining that the state court erred in its interpretation of

27

its own law." Accordingly, this Court must reject petitioner's third ineffective assistance of trial counsel claim. *See Davis v. Straub*, 430 F.3d 281, 291 (6th Cir. 2005).

### D. Claim IV: Failure to Object to Evidence of Prior Bad Acts

Petitioner next contends that trial counsel was ineffective for failing to object to the admission of ammunition recovered from petitioner's bag because it was not the same caliber as the murder weapon and was hence irrelevant and offered for the sole purpose of showing that petitioner had a propensity to commit crimes or was otherwise a bad person, in violation of Michigan Rule of Evidence 404(b).

The Michigan Court of Appeals rejected the claim:

> At the *Ginther* hearing, defense counsel explained that he did not object to the introduction of the ammunition under MRE 404(b) because he believed that its introduction was beneficial to the defense. Specifically, counsel used the fact that such ammunition did not fit the murder weapon to argue that someone else, not defendant, had been the shooter—after all, if the nine-millimeter murder weapon was defendant's, why had he been carrying around .357 ammunition the day before the shooting? Additionally, in light of the potential utility of such evidence for the defense, counsel was unconcerned about the propensity-to-commit implications attendant to the introduction of additional evidence of defendant's criminal background, given that one of the charges against defendant was felon in possession of a firearm. Thus, the prejudice to defendant was relatively limited, in counsel's view, while the exculpatory value of the ammunition was relatively high.

28

In our opinion, defendant has failed to rebut the presumption that counsel's strategic decision in this regard was sound. From the fact that—the day before the shooting—defendant was in possession of ammunition that could not be fired by the nine-millimeter murder weapon, counsel was able to sow seeds that might have sprouted reasonable doubt in the minds of rational jurors. Admittedly, it was a calculated risk—the jurors might also have drawn an improper propensity inference. But this was a difficult case, and calculated risks are often necessary to prevail in such cases. The ultimate failure of counsel's chosen strategy does not transform it into one that fell outside the wide range of potentially reasonable strategies. For those reasons, we conclude that defendant has failed to rebut the presumption that counsel's strategic decisions concerning the "other acts" evidence were effective.

*Randolph*, 2019 WL 286678, at * 8 (citations omitted).

The Court agrees that even if the ammunition found in petitioner's bag constituted evidence of prior bad acts, trial counsel's strategy of allowing the admission of the ammunition in an attempt to discredit or weaken the prosecution's case is a valid one that defeats petitioner's claim, even if the strategy was ultimately unsuccessful. *See Stalnaker v. Bobby*, 589 F. Supp. 2d 905, 913-14 (N.D. Ohio 2008). Accordingly, the Michigan Court of Appeals reasonably rejected petitioner's claim, and petitioner is not entitled to habeas relief on his fourth claim.

## E. Claim V: Cumulative Ineffective Assistance

Petitioner lastly argues that even if the individual ineffective assistance of counsel claims do not merit relief, the cumulative effect of these errors entitles him to habeas relief.

As the Court's preceding analysis explains, the individual claims of ineffectiveness alleged by petitioner are all essentially meritless or the alleged errors were of slight importance. Petitioner cannot show that the cumulative errors of his counsel amounted to ineffective assistance. *See Seymour v. Walker*, 224 F. 3d 542, 557 (6th Cir. 2000); *Alder v. Burt,* 240 F. Supp. 2d 651, 655 (E.D. Mich. 2003). Petitioner, therefore, is not entitled to relief on his fifth claim.

### F. Certificate of Appealability

Before petitioner may appeal the Court's dispositive decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard

by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell,* 537 U.S. 322, 327 (2003). In applying that standard, a district court may not conduct a full merits review but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. *Id.* at 336-37.

Having considered the matter, the Court concludes that the petitioner has failed to make a substantial showing of the denial of a constitutional right. Accordingly, a certificate of appealability is not warranted in this case. The Court further concludes that petitioner should not be granted leave to proceed *in forma pauperis* on appeal, as any appeal would be frivolous. *See* Fed. R. App. P. 24(a).

## IV. Conclusion

For the reasons above, the petition for writ of habeas corpus (ECF No. 1) is **DENIED WITH PREJUDICE**. The Court **DECLINES** to issue a certificate of appealability and **DENIES** petitioner leave to proceed *in forma pauperis* on appeal**.**

**IT IS SO ORDERED**.

s/ Shalina D. Kumar
SHALINA D. KUMAR
Dated: February 15, 2024                    United States District Judge